IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JO ANN P. BAILEY                                                                                     PLAINTIFF

V.                                                                      NO. 1:13-CV-00039-DMB-DAS

PATRICIA BAILEY, Individually
and as the Executor of the Estate
of Charlie Bruce Bailey                                                                          DEFENDANT


**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT**

This is a dispute over rights to the military survivor benefits of the late Charlie Bruce Bailey between Plaintiff Jo Ann Bailey, Charlie's ex-wife; and Defendant Patricia Bailey, Charlie's widow. On May 16, 2014, Defendant filed a motion for summary judgment. Doc. #32. For the reasons that follow, the motion for summary judgment is granted.

**I
Motion for Summary Judgment Standard**

"Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transport A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). To award summary judgment, "[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Id*. at 411–12 (internal quotation marks omitted). To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id*. at 412.

"If, as here, the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191–92 (5th Cir. 2011) (internal punctuation omitted). When considering a motion for summary judgment, the Court "resolve[s] factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II
## Relevant Facts

Jo Ann[1] married Charlie on November 10, 1961. Doc. #1 at ¶ 6. On or about July 1, 1987, Charlie retired from active duty in the United States Air Force ("USAF"). *Id.* at ¶ 7. During his service with the USAF, Charlie elected to participate in the Survivor Benefit Plan ("SBP"), a plan providing benefits to spouses and former spouses of deceased military retirees. *Id.* at ¶¶ 8, 12.

On December 13, 2002, the District Court of Grand Forks County, North Dakota, granted Charlie and Jo Ann a divorce on the grounds of irreconcilable differences. Doc. #33-2. The judgment granting the divorce ("Judgment") provided, among other things:

---

[1] To avoid confusion, the Court will refer to relevant persons by their first names.

2

> The parties have agreed to divide the Plaintiff's military retirement pay as a marital asset. [Jo Ann] is awarded, and [Charlie] agrees to pay, $1,200 per month of [his] military retirement. In addition, [Charlie] agrees to pay an additional $163 per month for the spousal benefit insurance. The parties are responsible for their own taxes associated with their retirement benefit[s]. The parties agree to cause to be entered a Qualified Domestic Relations Order or equivalent whereby the above retirement payments of $1,200 per month are made directly to [Jo Ann]. The [p]arties shall make all efforts to ensure such an Order is entered and accepted by the pay authority within 60 days of the date of Entry of Judgment. Until such time as an appropriate order is entered and accepted, [Charlie] shall pay directly to [Jo Ann] the sum of $1,200 per month.
>
> * * *
>
> That each party shall, within 10 days from and after the date of entry of Judgment … execute any document, transfer papers, titles or other documents required to effect the terms and provisions of the Judgment and Decree. In the event that a party fails to sign transfer papers, as required, the Judgment shall operate to transfer title to property, as awarded.

*Id.* at 2, 6.

It is undisputed that, following entry of the Judgment, Charlie made monthly payments of $1,200 to Jo Ann and that he continued to pay $163 for SBP premiums.

Charlie married Patricia in February 2003, Doc. #1 at ¶ 17, roughly two months after the Judgment divorcing him and Jo Ann.

In early-2008, Jo Ann called the Defense Finance and Accounting Services ("DFAS") to ascertain why she had not received an IRS Form 1099 reflecting her share of Charlie's retirement benefits. Doc. #33-3 at 42–43. When she called, Jo Ann learned that Charlie arranged her payments as "allotments," under which full benefits were paid to Charlie and Charlie, in turn, paid the required $1,200 to Jo Ann. *Id.* at 43–44. During the conversation with DFAS, Jo Ann was informed that the elected beneficiary of Charlie's SBP plan was listed as "spouse" rather than "former spouse." *Id.* at 42. More specifically, Jo Ann was told that, because more than a year had passed since the divorce, Charlie would have to effect the beneficiary change himself.

3

*Id*. at 55. The DFAS representative stated that "after a divorce … there was a period of time when the former spouse should be designated as former spouse" and that if Charlie remarried "there would be some legal consequences." *Id*. at 47.

At the conclusion of the DFAS conversation, Jo Ann called Charlie. Doc. #33-3 at 47. Charlie "assured" Jo Ann that she was the proper beneficiary and that he would "never change [that]." *Id*. at 48. Charlie also completed paperwork to ensure that Jo Ann received the 1099 on her portion of his retirement payments. *Id*. at 46.

On July 12, 2008, DFAS sent Jo Ann a letter informing her that:

> If your divorce decree specified that you are to be designated as a former spouse beneficiary for the Survivor Benefit Plan (SBP) you must make a "deemed election" for SBP coverage within one year of the date of your divorce directly to the Retired Pay office; DFAS, US Military Retirement Pay, PO Box 7130, London, KY 40742-7130 …. If you have any questions regarding SBP coverage, you may call the Retired Pay office at 1-800-321-1080.

Doc. #33-5. DFAS sent Jo Ann a second copy of the letter on July 22, 2008. *Id*.

From that point on, whenever Jo Ann spoke with DFAS, she asked whether the beneficiary had been changed. Doc. #33-3 at 56. Jo Ann also asked Charlie about the election on three or four occasions and each time he assured her that "he would take care of it." *Id*.

On September 6, 2009, Jo Ann sent Charlie an e-mail stating in relevant part:

> You have ignored the last 2 email msg I've sent you regarding your payment of my insurance. These payments were set forth in the divorce decree and you agreed to them. You are in contempt of court for failing to pay the agreed upon amount for my health and dental insurance. I am waiting for you to either pay or explain why you aren't paying and neither has happened thus far. I would like for you to begin payment at once.

Doc. #34-5.

On September 14, 2009, Charlie responded to the September 9 e-mail by writing in relevant part:

4

> I was supposed to pay $46 for TRICARE and you now get Tricare for Life for free and $22 for dental. The $50 more than the $1200 required more than covers the 22 for dental and there is no more TRICARE to pay. I still have the returned note where you told me to stop paying your insurance, that you would pay it yourself. You get more of my AF retirement than I do. <u>I have had no luck with SBP either so I will ask Sen Cochran to intervene. It is continued to be paid with you as be[]neficiary.</u>

Doc. #34-5 (emphasis added). Upon receiving this email, Jo Ann "felt like it had been taken care of." Doc. #33-3 at 56.

Over two years later, on November 2, 2011, Jo Ann submitted to the Air Force Board for Correction of Military Records ("AFBCMR") a request to correct Charlie's "records … to show he made a timely election for former spouse coverage under the Survivor Benefit Plan (SBP)." Doc. #34-4.

Charlie died on November 29, 2011, in Webster County, Mississippi. Doc. #1 at ¶ 21. On February 27, 2012, Patricia was appointed Executrix of Charlie's estate ("Estate"). Doc. #33-4. Commensurate with her executrix duties, Patricia provided notice to creditors in the March 8, 2012, March 15, 2012, and March 22, 2012, issues of the *Webster Progress Times*, a weekly newspaper in Webster County. *Id*. On June 7, 2012, the Chancery Court of Webster County, noting that "[t]he time for registration and probation of claims against said estate … elapsed [with] no claims filed," closed Charlie's estate. *Id*.

On September 6, 2012, the AFBCMR issued an order holding that:

> While we do not take issue with [Jo Ann']s assertion that her divorce decree ordered her deceased former husband to continue coverage for her under the SBP, he failed to convert the coverage to former spouse coverage within one year of their divorce as required by law. Regrettably, [Jo Ann] also failed to execute a deemed election for coverage within the one year timeframe. Consequently, the deceased member's widow [Patricia] gained entitlement to the benefit as an operation of law. If [Patricia] provides a notarized statement relinquishing her potential entitlement to the SBP annuity, the Board may be willing to reconsider the applicant's appeal in consideration of the new evidence. Otherwise, the applicant's only recourse is to return to a court of law to have the issue decided.

Doc. #34-4 at 3–4.

On February 26, 2013, Jo Ann filed the instant action. Doc. #1.

**III**
**Analysis**

In her complaint, Jo Ann asserts: (1) a declaratory judgment action seeking "a declaration construing and declaring Plaintiff's entitlement to payments under the SBP, and declaring that Defendant, Patricia Bailey is not entitled to any such payments;" (2) a claim for an injunction "order[ing Patricia] to provide a signed, notarized statement relinquishing any potential entitlement to the SBP annuity benefits;" (3) a breach of contract claim against the Estate; (4) a claim against the Estate for breach of the implied covenant of good faith and fair dealing; and (5) a claim against the Estate for breach of trust. Doc. #1.

**A. The Estate Claims**

Patricia argues that the claims against the Estate "are barred as untimely, whether viewed through the time limit applicable to claims against estates, or pursuant to Mississippi's general statutes of limitations." Doc. #33 at 18. Jo Ann's response in opposition addresses only the time limits applicable to claims against estates. *See* Doc. #35 at 9–11.

**1. Limitations on Estate Claims**

Miss. Code Ann. § 91-7-151 provides in relevant part:

> All claims against the estate of deceased persons, whether due or not, shall be registered, probated and allowed in the court in which the letters testamentary or of administration were granted within ninety (90) days after the first publication of notice to creditors to present their claim. Otherwise, the same shall be barred and a suit shall not be maintained thereon in any court, even though the existence of the claim may have been known to the executor or administrator.

Though the 90-day window acts as a limitations period, "[t]he Mississippi Supreme Court has held that mere publication does not bar a creditor from filing a claim if that creditor could

have been ascertained through 'reasonably diligent efforts.'" *Ray v. Estate of Harvey*, No. 2:01-cv-088, 2006 WL 2356163, at *1 (S.D. Miss. Aug. 14, 2006) (quoting *In re Estate of Petrick*, 635 So.2d 1389, 1392 (Miss. 1994)); *see also* Miss. Code Ann. § 91-7-145(1) ("The executor or administrator shall make reasonably diligent efforts to identify persons having claims against the estate."). If a creditor could be found through "reasonably diligent efforts," he is a "reasonably ascertainable creditor" and must "be given notice by mail by the administrator before the ninety days specified in … section 91-7-151 … begins to run." *In re Estate of Ladner*, 911 So.2d 673, 676 (Miss. Ct. App. 2005). The question of whether a party is "reasonably ascertainable" is a question of fact. *Armstrong v. Armstrong*, 130 F.R.D. 449, 453 (D. Colo. 1990).

Although the Mississippi Supreme Court appears not to have addressed the issue of burden of proof in barring claims pursuant to section 91-7-151, it has held that assertion of a statute of limitations is an affirmative defense on which the defendant bears the burden of proof. *Neely v. Johnson-Barksdale Co.*, 12 So.2d 924, 925 (Miss. 1943). However, where it has been shown that a statute of limitation applies, and "the plaintiff asserts that his case is not barred by the statute of limitations, the burden is on him to show some legal or equitable basis for avoiding such period of limitations period." *Hall v. Dillard*, 739 So.2d 383, 387–88 (Miss. Ct. App. 1999).

Here, there is no dispute that Jo Ann filed her claims outside the 90-day period following Patricia's publication of notice. Instead, Jo Ann argues that her claims against the Estate are not barred because she was a reasonably ascertainable creditor. Doc. #35 at 10–11. Given this argument, the Court concludes that Jo Ann bears the burden of proof of showing that she was a reasonably ascertainable creditor. *Hall*, 739 So.2d at 387–88. In this regard, Jo Ann argues that Patricia, as the executor of the Estate, "knew of [Charlie's] marriage to Jo Ann, and … had a

7

substantial conflict of interest in being the person with the decision to notify a potential creditor that stood to prevent her from obtaining the SBP benefits of approximately $1,700 per month." Doc. #35 at 11.

The record reflects that Jo Ann and Charlie communicated regularly (at least once by email) regarding enforcement of the Judgment; and that Jo Ann was the listed SBP beneficiary on Charlie's military pension. Under these circumstances, the Court concludes that there is a genuine issue of material fact as to whether reasonably diligent efforts would have revealed Jo Ann as a creditor of the Estate. *See Matter of Estate of Anderson*, 615 N.E.2d 1197, 1206 (Ill. Ct. App. 1993) ("Minimum standards of diligent inquiry would necessitate a good-faith search of decedent's personal and business financial records to disclose debts of the estate …"). Accordingly, summary judgment against Jo Ann based on § 91-7-151 must be denied. *See In re Estate of Petrick*, 635 So.2d at 1392. But, the Court's inquiry does not end here. Even if Jo Ann could show that Patricia failed to give her proper notice as a reasonably ascertainable creditor of the Estate, Jo Ann's claims against the Estate must still be evaluated against the applicable general statutes of limitations.

## 2. General Statutes of Limitations

Having found that Jo Ann's claims may possibly not be barred by the probate limitations period, the Court turns to the general statutes of limitations applicable to her claims. At the summary judgment stage, the defendant bears the burden of proof of establishing the elements of a statute of limitations defense. *Chaney v. Hinds Cnty.,* No. 3:10-cv-20, 2010 WL 4553628, at *3 (S.D. Miss. Nov. 3, 2010) (citing *Sec. Indus. Ins. Co. v. U.S.*, 702 F.2d 1234, 1250 (5th Cir. 1983)). "This means that defendants have the burden to establish the essential facts in support of this defense, including the date of accrual of plaintiff's causes of action." *Id.* (collecting cases).

In support of her motion for summary judgment, Patricia argues:

> Jo Ann knew - at least by 2008 - that Charles had failed to properly designate her as a former spouse entitled to receive benefits. She should have filed her claims - whether separately or through a motion in divorce court - in a timely manner. She failed to do so. As such, her claims are barred pursuant to the general statute of limitations.

Doc. #33 at 18.

### a. Breach of Contract

"Causes of action for breach of contract are subject to the three-year statute of limitations set forth in Mississippi Code Annotated section 15-1-49, which provides: 'All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.'" *Wallace v. Greenville Pub. Sch. Dist.*, __ So.3d __, No. 2012-CA-01886, 2014 WL 1282725, at *2 (Miss. Ct. App. Apr. 1, 2014). Generally, a breach of contract cause of action accrues on the date of "actual injury, the date the facts occurred which enable the Plaintiffs to bring a cause of action." *CitiFinancial Mortg. Co., Inc. v. Washington*, 967 So.2d 16, 19 (Miss. 2007). Despite the injury rule, a claim accrues at the time the plaintiff knew or should have known of the breach of contract, "regardless of the time when the damages from the breach occurred." *Wallace*, 2014 WL 1282725, at *2 (internal punctuation omitted); *see also First Trust Nat. Ass'n v. First Nat. Bank of Commerce*, 220 F.3d 331, 334 (5th Cir. 2000) ("In Mississippi, a breach of contract claim accrues at the time of the breach regardless of when damages resulting from the breach occur."); *U.S. v. Fed. Ins. Co.*, 251 Fed. App'x 269, 271 (5th Cir. 2007) (same).

Jo Ann alleges that the Judgment was a contract and that Charlie's failure to "effect terms and provisions" of the document amounted to a breach of contract. Doc. #1 at ¶ 38. While "[p]roperty settlement agreements which have been approved by [a] court and incorporated in [a]

9

judgment of divorce are treated like any other legally binding contract," *Stuart v. Stuart*, 956 So.2d 295, 301 (Miss. Ct. App. 2006), the Court has serious concerns as to whether a breach of a divorce judgment may support a claim for breach of contract. *See West v. West*, 891 So.2d 203, 210 (Miss. 2004) (contempt action for breach of judgment entered pursuant to divorce agreement); *see also Doub v. Doub*, 326 S.E.2d 259, 260–61 (N.C. 1985) ("[C]ourt ordered separation agreements [are] enforceable by the contempt powers of the court …. The parties to a consent judgment … do <u>not</u> have an election to enforce such judgment by … independent action in contract.") (emphasis in original). However, even assuming the Judgment could be enforced through a breach of contract action, such a claim is time barred.

Under the terms of the Judgment, Charlie was required to "within 10 days from and after the date of entry of Judgment … execute any document, transfer papers, titles or other documents required to effect the terms and provisions of the Judgment and Decree." Doc. #33-2 at 6. Accordingly, assuming his failure to execute a change to the SBP could be deemed a breach, such breach occurred on December 24, 2002, the eleventh day following entry of the Judgment. *See generally Browning v. Boral Bricks, Inc.*, 2:11-CV-168-, 2012 WL 1231884, at *3 (S.D. Miss. Apr. 11, 2012) ("The Agreement plainly requires that Southern Tire obtain insurance coverage [and] name Boral as an additional insured on the policy ... . The obligation appears to accrue upon the execution of the contract. Therefore, the … breach of contract claim … accrued on August 17, 2006, the date on which the parties executed the Agreement.") (internal punctuation and footnote omitted).

It is undisputed that Jo Ann learned of this breach sometime before July 2008, when she spoke with DFAS regarding the division of the retired pay. Doc. #33-3 at 54. Thus, Jo Ann's breach of contract claim accrued no later than the first half of 2008, and expired three years later.

Because Jo Ann's complaint was filed on February 26, 2013, well after the running of the statutory period, her breach of contract claim against the Estate is time barred.

### b. Good Faith and Fair Dealing

An action for breach of the covenant of good faith and fair dealing is subject to Mississippi's general three-year statute of limitations. *See Washington*, 967 So.2d at 19. Breach of good faith and fair dealing claims accrue on the date the plaintiff's "right to sue began." *Id*. A right to sue for breach of the covenant of good faith and fair dealing, in turn, arises when a defendant engages in "conduct which violates standards of decency, fairness or reasonableness." *BC's Heating & Air and Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, 892 F.Supp.2d 779, 785 (S.D. Miss. 2012) (internal quotation marks omitted). One district court in this state held that a claim for breach of the covenant of good faith and fair dealing accrued no later than when "the first signs of discord appeared." *B & C Const. and Equipment, LLC v. Ovella*, 880 F.Supp.2d 735, 739 (S.D. Miss. 2012).

Jo Ann's good faith and fair dealing action is based on Charlie's "acts or omissions in executing the documents, transfer papers, titles or other documents required to effect terms and provisions of the Judgment and Decree of divorce …." Doc. #1 at ¶ 40. As explained above, even if actionable in a contract action, such acts or omissions occurred no later than December 2002, the deadline for Charlie to comply with the terms of the Judgment, and accrued no later than the first half of 2008, when Jo Ann learned of such failure. The first half of 2008 also appears to be when the first signs of discord arose regarding Charlie's performance under the Judgment. Based on these events, the Court concludes that, as pled, Jo Ann's claim for breach of the covenant of good faith and fair dealing accrued no later than the first half of 2008. Because more than three years passed between the first half of 2008 and the filing of this action, summary

judgment must be granted against Jo Ann's claim against the Estate arising from a breach of the covenant of good faith and fair dealing.

### c. Breach of Trust

Jo Ann alleges that:

> Decedent's negotiation of a divorce settlement based upon Plaintiff's entitlement to the payment of benefits under the SBP, and his failure to execute the documents, transfer papers, titles or other documents required to effect terms and provisions of the Judgment and Decree of divorce entered by the North Dakota Court constitutes a breach of trust or fraud for which Defendant would have been liable and his estate is now liable.

Doc. #1 at ¶ 42.

In 2014, the Mississippi Legislature passed the Mississippi Uniform Trust Code. Miss. Code Ann. § 91-8-101. While the statute applies "to all trusts created before, on, or after July 1, 2014," the law provides that "[i]f a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before July 1, 2014, that statute continues to apply to the right even if it has been repealed or superseded." Miss. Code Ann. § 91-8-1106. Prior to the passage of the Mississippi Uniform Trust Code, breach of trust actions were not governed by a specific statute of limitations and were, therefore, subject to the three-year catchall period.[2] *See generally In re Smith*, 495 B.R. 291, 297 (Bankr. N.D. Miss. 2013) (breach of fiduciary duty action arising from trust subject to three-year catchall). An action for breach of trust accrues upon the "act by the trustee adverse to the rights of the … trust." *Hook v. Bank of Leland*, 98 So. 594, 597 (Miss. 1924).

---

[2] Mississippi law provides for a ten-year statute of limitations in "purely and exclusively equitable" actions concerning certain kinds of trust. *Hooker v. Greer*, 81 So.3d 1103, 1110–11 (Miss. 2012) (citing Miss. Code Ann. § 15-1-39). Jo Ann has not alleged a purely and exclusively equitable breach of trust action. Accordingly, the ten-year statute of limitations does not apply.

12

Here, Jo Ann's complaint alleges a breach of trust based on Charlie's negotiation of a divorce settlement and his subsequent failure to comply with the terms of the Judgment. As explained above, a claim arising from Charlie's breach of his duties under the Judgment accrued no later than the first half of 2008. Accordingly, Jo Ann's breach of trust claim against the Estate, which was filed in 2013, is barred by the general three-year statute of limitations.

### B. Claims Against Patricia

In addition to the claims against the Estate, Jo Ann seeks declaratory and injunctive relief against Patricia in her individual capacity. Doc. #1 at ¶¶ 32–36. Specifically, Jo Ann seeks: (1) "a declaration construing and declaring [her] entitlement to payments under the SBP, and declaring that … Patricia Bailey is not entitled to any such payments; (2) a Court order directing Patricia "to provide a signed, notarized statement relinquishing any potential entitlement to the SBP annuity benefits;" and (3) a Court order directing "that all SBP benefits or funds paid to … Patricia Bailey, or any other person that the Defendants contend to be a proper beneficiary under the SBP annuity be held in trust." *Id*. In the motion for summary judgment, Patricia argues that the claims against her in her individual capacity are barred by "res judicata and/or collateral estoppel" and "[a]s a matter of statutory law." Doc. #33 at 14.

The crux of Jo Ann's claim is that she, rather than Patricia, is the proper SBP beneficiary. Because the Court concludes below that Jo Ann is not the proper beneficiary on the facts presented, it will not address the issues of collateral estoppel or res judicata.

#### 1. Applicable Law

The Survivor Benefit Plan was created "to provide for survivors of retired military personnel. Under the plan, premiums are deducted from an eligible service member's payments. When the service member dies, payments go to the service member's designated beneficiary."

*Holmes v. U.S.*, 98 Fed. Cl. 767, 770 (Fed. Cl. 2011) (internal citations omitted). "A former spouse's entitlement to SBP benefits can be secured by parties to a divorce in one of two ways." *Id*. at 781.

In the event of a divorce, a service member may elect to provide an annuity to a former spouse. 10 U.S.C. § 1448(b)(3). However, such an election must be "written, signed by the person making the election, and received by the Secretary [of the Air Force] within one year after the date of the decree of divorce …." *Id*. Alternatively, if the service member "is required under a court order … to provide an annuity to a former spouse upon becoming eligible to be a participant in the plan[,]" the former spouse shall be deemed the designated beneficiary if the Secretary of the Air Force "receives a written request from the former spouse concerned that the election be deemed to have been made in the same manner as provided in section 1450(f)(3) of this title" 10 U.S.C. § 1448(f)(3)(B). To be valid, such a forced election by a former spouse must include a "written request," a "[c]opy of [the] court order or other official statement," and be made within one year of the issuance of the relevant court order. 10 U.S.C. § 1450(f)(3)(C). Thus, under the applicable framework, a court-ordered election of former spouse benefits may be made either by the service member or the former spouse. However, such election must be made within one year of the court order directing the election.

### 2. Analysis

Jo Ann does not argue that she made a deemed election under the terms of the statute.[3] Rather, citing *Woll v. United States*, 41 Fed. Cl. 371 (Fed. Cl. 1998), she argues that Charlie's

---

[3] In her response brief, Jo Ann cites to *Holt v. U.S.*, in which a court found that a former spouse made a deemed election where, within one year of entry of a divorce decree, she submitted to DFAS: (1) the amended divorce decree; (2) a request for alimony; and (3) a "memorandum" stating that "enclosed Amended Final Judgment of Dissolution of Marriage concerning SBP entitlement is forwarded for your review and action as a matter under your cognizance." 64 Fed. Cl. 215, 216, 226–27 (Fed. Cl. 2005). Notwithstanding the fact that *Holt* is a deemed election case, Jo Ann does not argue that she made a deemed election. Rather, following the citation, Jo Ann, without argument or citation, writes that she "was receiving a portion of Charlie's retirement pay …. Charlie continued to

14

intent controls and "any evidence of Charlie's intent … is consistent with designating Jo Ann as the beneficiary." Doc. #35 at 8.

In *Woll*, a service member divorced his wife on April 5, 1990. 41 Fed. Cl. at 372. The divorce decree provided that "any survivorship rights in the aforementioned military pension shall vest in the Petitioner/Wife upon the death of the Respondent/Husband to the extent allowable by law." *Id*. On April 25, 1990, the service member sent to DFAS a copy of the divorce decree and a letter directing DFAS to discontinue his participation in the SBP. *Id*. On January 18, 1991, the service member's former spouse submitted to DFAS a copy of the divorce decree and a demand for "support, alimony, and division of … retired pay." *Id*. Following the death of the service member, the former spouse demanded SBP benefits. *Id*.

In holding that the former spouse was not entitled to SBP benefits, the *Woll* court concluded that the former spouse was not entitled to make a forced election because the divorce decree did "not satisfy the statutory requirement that either [the service member or the former spouse] had to make an election for former spouse status." *Id*. at 374. The court also considered and rejected the former spouse's contention that the service member's letter was a sufficient statutory designation, on the grounds that "no communication indicated any intent on Major Woll part to provide former spouse benefits to plaintiff." *Id*.

Contrary to Jo Ann's contention, *Woll* does not stand for the proposition that intent can override the statutory election requirement. Rather, even at its broadest possible reading, *Woll* merely held that a service member's intent could be used to determine whether an otherwise

---

have the SBP premiums deducted from his retirement pay [and she] was identified in the retired pay system by name and date of birth on Charlie's SP information." Doc. 35 at 7. To the extent the citation to *Holt* may be read as an argument that Jo Ann made a deemed election, the Court finds that no deemed election was made because, unlike the former spouse in *Holt* (who filed an array of documents within the one-year stator period), Jo Ann waited nearly ten years before submitting anything to DFAS. *See* 10 U.S.C. § 1450(f)(3)(C) (deemed election must be made within one year). The relevance of the foregoing facts to the issue of whether Charlie made an election is discussed below.

15

timely correspondence could be deemed an election under the statutory framework of 10 U.S.C. § 1448(b)(3). This conclusion is consistent with subsequent case law which has held that the election provision may be met by "substantial compliance" with § 1448. *Bonewell v. U.S.*, 95 Fed. Cl. 752, 768 (Fed. Cl. 2010) (former spouse stated a claim for entitlement to benefits where the service member submitted to "DFAS, within a year of their divorce, a signed DD Form 2556 indicating that he was making an allotment pursuant to a [settlement], a copy of the court order setting a hearing date for the couple's divorce, and a page from the couple's separation agreement indicating that [the former spouse] shall receive … benefits").

Jo Ann claims that Charlie intended to designate her as SBP beneficiary and that such intent may be gleaned from evidence that: (1) Charlie told her that he would never alter her status as SBP beneficiary; (2) her name and date of birth were listed as the SBP plan's designated beneficiary; (3) she continued to receive a portion of Charlie's military retirement pay; and (4) Charlie continued to have the SBP premium payments deducted from his retirement pay after the divorce. Doc. #35 at 7. Although Jo Ann does not specifically allege "substantial compliance," her allegations should be analyzed under the substantial compliance framework. *See Holmes*, 98 Fed. Cl. at 778 ("Ms. Noreen Holmes claims that 'the government's knowledge of the divorce, 'the government's' post-divorce payments to Noreen Holmes, and Thomas Holmes' manifest intent ... to provide Noreen Holmes with SBP benefits constitutes a 'deemed election' that secures Noreen Holmes' entitlement to the SBP annuity.' <u>In effect, she contends that there was substantial compliance with the requirements for electing former-spouse coverage</u>.") (internal punctuation and citations omitted) (emphasis added).

In considering the issue of substantial compliance, the Court observes that the facts of this case are substantially similar to those of *Holmes*. In *Holmes*, the court found no entitlement

16

to SPB benefits where a divorce decree provided that the ex-wife would "continue to be the primary beneficiary of [the former service member's] life insurance policy through the [United States] Military" and the ex-wife received a portion of the service member's retirement benefits in a monthly allotment. *Id*. at 783–84. In so holding, the *Holmes* court noted that there was no evidence the parties furnished the government a copy of the relevant divorce decree and that, as such there was no evidence the service member or his ex-wife "complied with the former spouse election procedures in any way, let alone in a substantial way." *Id*.

Here, as in *Holmes*, there is no evidence that Charlie attempted to comply with the election requirements in any way. Thus, the Court finds that Charlie did not substantially comply with the election procedures and that, therefore, he may not be deemed to have made an election of Jo Ann as beneficiary. In the absence of a valid election, the Court concludes that the designated beneficiary of "spouse" was not changed to "former spouse" and that Jo Ann has failed to create a genuine issue of material fact as to her entitlement to the SBP benefits. Accordingly, summary judgment must be granted against the claims for declaratory and injunctive relief. *See Holmes*, 98 Fed. Cl. at 784 – 85 ("[I]n this instance, the failure of Noreen and Thomas Holmes to effect a former-spouse election mandates [judgment against the former-spouse]."); *Wise v. Wise*, 765 So.2d 898, 900 (Fl. Ct. App. 2000) ("The parties' dissolution judgment in this case was entered in 1993, and neither party complied with either of the two means by which a former spouse may be made beneficiary of an SBP. Accordingly, despite the requirement in the dissolution judgment, [former spouse] cannot now obtain the SBP coverage.").[4]

---

[4] *But see King v. U.S.*, 65 Fed. Cl. 385, 392–93 (Fed. Cl. 2005) (holding AFBCMR did not act "improperly" when it allowed a former-spouse to make an untimely election). *King*, which was not cited by Jo Ann, is an unusual case in which the AFBCMR ordered, and then subsequently attempted to rescind, a deemed election of a former spouse. 65

# IV
# Conclusion

For the reasons above, the Court concludes that Patricia's motion for summary judgment must be **GRANTED**.

SO ORDERED, this the 19th day of August, 2014.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

Fed. Cl. at 392. This Court has not found an opinion in which *King* has been cited for the proposition that a former spouse may be entitled to SBP benefits without a finding that an election had been made.